IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | | |
|---|---|---|
| Historic Charleston Foundation, | ) | Case No. 2:19−cv−03422-BHH |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **COMPLAINT** |
| | ) | |
| Carroll Building, LLC, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**INTRODUCTION**

1.  Plaintiff is a "qualified" "donee" and "protector" of a "qualified conservation easement," acquired by a 1984 deed, under federal tax laws and regulations, principally 26 U.S.C. § 170(h). The deed clearly evidences an owner-taxpayer-grantor's *intent* to grant "a restriction (granted in perpetuity) on the use which may be made of real property," under 26 U.S.C. § 170(h). By its *express* terms, the deed "does hereby grant" Plaintiff the "right to restrict the use of" the subject property as a "qualified conservation contribution in accord with Section 170(h) of the Internal Revenue Code." Based on the deed, the owner-taxpayer-grantor in fact took a significant tax deduction, under 26 U.S.C. § 170(h). For four decades, under Plaintiff's protection, the use of the subject property has been restricted, consistent with federal tax laws and regulations, and the intent and express terms of the deed, "in furtherance of [Plaintiff's] purposes in preserving and protecting the historical and architectural heritage of Charleston and its environs," "in order to further the conservation of the property and the goals of [Plaintiff]." Defendant, the current owner, together with a prospective purchaser, now desire to make a more lucrative use of the subject property as a *hotel*. Plaintiff refused to consent to this change of use for reasons within its purview. In turn, Defendant is now attempting to wrongfully convert Plaintiff's rights and abrogate its responsibilities pertaining to the federal conservation easement. Plaintiff accordingly brings this

1

action seeking a declaration of its rights and responsibilities arising under applicable federal tax laws and regulations, principally 26 U.S.C. § 170(h).

## PARTIES AND JURISDICTION

2. Plaintiff Historic Charleston Foundation is a South Carolina nonprofit corporation having its principal place of business in Charleston, South Carolina ("HCF").

3. Defendant Carroll Building, LLC is a South Carolina limited liability company having its principal place of business in Charleston, South Carolina (the "Current Owner").

4. This Court has federal question jurisdiction because the claims at issue arise under federal tax laws and regulations, principally 26 U.S.C. § 170(h).

5. Venue is proper in this Division because both parties' principal place of business is in this Division.

## FACTUAL BACKGROUND

A. **HCF's History and Mission**

6. HCF was formed in 1947.

7. HCF's official mission statement is as follows: "Historic Charleston Foundation's mission is to champion the historic authenticity, cultural character, and livability of the Charleston region through advocacy, stewardship, and community engagement."

8. HCF further describes its mission and long history of success, along with numerous examples of its work, on its official website, https://www.historiccharleston.org/about/, as follows:

> Historic Charleston Foundation is an advocacy organization advancing the mission of historic preservation. As historic preservation has evolved into more than a movement to simply save historic buildings, the Foundation has broadened its scope into balancing the needs of modern society with protecting the sensitive fabric of the historic district.
>
> Communities must be vibrant to survive. With vibrancy comes inevitable growth and development. Our mission is to address modern society's needs – mobility and transportation, tourism,

> livability and growth – while protecting and preserving the architecture and material culture of Charleston and its Lowcountry environs. Historic Charleston Foundation champions the historic authenticity, cultural character and livability of the Charleston region through advocacy, stewardship and community engagement.
>
> . . .
>
> From establishing a revolving fund that became a national model to recognizing that saving a neighborhood is more meaningful and impactful than saving a single structure, Historic Charleston Foundation has been, and continues to be, a leading force in preservation, not just in Charleston, but throughout the country.

**B.     HCF's Rights and Responsibilities as a "Qualified Organization" and "Eligible Donee" Under Federal Tax Laws and Regulations**

9.     For purposes of receiving a "qualified conservation easement" under federal tax law, 26 U.S.C. § 170(h), federal tax regulation, 26 C.F.R. § 1.170A-14(c)(1), defines "Qualified Organization" and "Eligible Donee," as follows:

> (c) Qualified organization - (1) Eligible donee. To be considered an eligible donee under this section, an organization must be a qualified organization, have a commitment to *protect* the conservation purposes of the donation, and have the resources to *enforce* the restrictions. A conservation group organized or operated primarily or substantially for one of the conservation purposes specified in section 170(h)(4)(A) will be considered to have the commitment required by the preceding sentence. A qualified organization need not set aside funds to enforce the restrictions that are the subject of the contribution. For purposes of this section, the term qualified organization means: (i) A governmental unit described in section 170(b)(1)(A)(v); (ii) An organization described in section 170(b)(1)(A)(vi); (iii) A charitable organization described in section 501(c)(3) that meets the public support test of section 509(a)(2); (iv) A charitable organization described in section 501(c)(3) that meets the requirements of section 509(a)(3) and is controlled by an organization described in paragraphs (c)(1) (i), (ii), or (iii) of this section.  (emphasis added).

10.    Since at least 1982, HCF has been a "Qualified Organization" and "Eligible Donee" under federal tax regulation, 26 C.F.R. § 1.170A-14(c)(1).

3

11. Accordingly, HCF has the right to receive donations of federal conservation easements, together with the responsibilities to protect and enforce the same, under federal tax laws and regulations, principally 26 U.S.C. § 170(h).

12. HCF currently owns, protects, and enforces nearly 250 federal conservation easements.

13. HCF must perform its responsibilities to protect and enforce its federal conservation easements to maintain its status as a "Qualified Organization" and "Eligible Donee" under federal tax laws and regulations, principally 26 U.S.C. § 170(h) and 26 C.F.R. § 1.170A-14(c)(1).

14. HCF diligently protects and enforces its federal conservation easements, performing extensive monitoring and inspecting, and taking further enforcement action when necessary.

15. HCF submits an annual "Form 990" to the Internal Revenue Service, as required by federal tax law. For example, in its Form 990 for the year 2018, HCF was required to report on its federal conservation easements, as follows:

> PUBLIC DISCLOSURE COPY
> EXTENDED TO NOVEMBER 15, 2019
> Form **990** — Return of Organization Exempt From Income Tax
> OMB No. 1545-0047
> Under section 501(c), 527, or 4947(a)(1) of the Internal Revenue Code (except private foundations)
> **2018**
> Department of the Treasury / Internal Revenue Service
> ▶ Do not enter social security numbers on this form as it may be made public.
> ▶ Go to www.irs.gov/Form990 for instructions and the latest information.
> Open to Public Inspection
>
> A For the 2018 calendar year, or tax year beginning _____ and ending _____
> B Check if applicable: Address change
> C Name of organization: **HISTORIC CHARLESTON FOUNDATION**
> D Employer identification number
>
> . . .
>
> 7 Did the organization receive or hold a conservation easement, including easements to preserve open space, the environment, historic land areas, or historic structures? *If "Yes," complete Schedule D, Part II* ..........
>
> . . .

4

| | Part II | Conservation Easements. Complete if the organization answered "Yes" on Form 990, Part IV, line 7. | | |
|---|---|---|---|---|
| 1 | | Purpose(s) of conservation easements held by the organization (check all that apply). ☐ Preservation of land for public use (e.g., recreation or education)  ☒ Preservation of a historically important land area  ☐ Protection of natural habitat  ☒ Preservation of a certified historic structure  ☐ Preservation of open space | | |
| 2 | | Complete lines 2a through 2d if the organization held a qualified conservation contribution in the form of a conservation easement on the last day of the tax year. | | Held at the End of the Tax Year |
| a | | Total number of conservation easements | 2a | 241 |
| b | | Total acreage restricted by conservation easements | 2b | 2,082.00 |
| c | | Number of conservation easements on a certified historic structure included in (a) | 2c | 234 |
| d | | Number of conservation easements included in (c) acquired after 7/25/06, and not on a historic structure listed in the National Register | 2d | 41 |
| 3 | | Number of conservation easements modified, transferred, released, extinguished, or terminated by the organization during the tax year ▶ _____1_____ | | |
| 4 | | Number of states where property subject to conservation easement is located ▶ _____1_____ | | |
| 5 | | Does the organization have a written policy regarding the periodic monitoring, inspection, handling of violations, and enforcement of the conservation easements it holds? | ☒ Yes | ☐ No |
| 6 | | Staff and volunteer hours devoted to monitoring, inspecting, handling of violations, and enforcing conservation easements during the year ▶ _____2220_____ | | |
| 7 | | Amount of expenses incurred in monitoring, inspecting, handling of violations, and enforcing conservation easements during the year ▶ $ _____75,035._____ | | |
| 8 | | Does each conservation easement reported on line 2(d) above satisfy the requirements of section 170(h)(4)(B)(i) and section 170(h)(4)(B)(ii)? | ☒ Yes | ☐ No |
| 9 | | In Part XIII, describe how the organization reports conservation easements in its revenue and expense statement, and balance sheet, and include, if applicable, the text of the footnote to the organization's financial statements that describes the organization's accounting for conservation easements. | | |

## C.  The Deed of Conservation

16. At issue in this case, that certain Deed of Conservation Easement was entered into by and between Harborview Development Partners, as grantor, and HCF, as grantee, dated December 18, 1984, and recorded December 21, 1984, in Book F142 at Page 569 in the Register of Mesne Conveyance for Charleston County (the "Deed of Conservation," attached hereto as Ex. A).

17. The Deed of Conservation begins as follows:

> DEED OF CONSERVATION EASEMENT
> THIS DEED OF EASEMENT, MADE THIS 18th DAY OF DECEMBER, 1984 BETWEEN HARBORVIEW DEVELOPMENT PARTNERS, AS GRANTOR AND PARTY OF THE FIRST PART, AND HISTORIC CHARLESTON FOUNDATION, INC., A NON-PROFIT CORPORATION ORGANIZED UNDER THE LAWS OF THE STATE OF SOUTH CAROLINA AS GRANTEE AND PARTY OF THE SECOND PART.

5

18.     The Deed of Conservation includes the following recitals, which are later incorporated into the deed as part of its consideration, and which state *inter alia* that the property is an "important" "historical element" in the "Historic District of Charleston"; that HCF is "authorized to accept" the "conservation easement" "in furtherance of its purposes in preserving and protecting the historical and architectural heritage of Charleston and its environs"; and that "Grantor desires" to grant HCF the "conservation easement" "in order to further the conservation of the property and the goals of" HCF, as follows:

> REFERRALS
>
> WHEREAS, Grantor is the Owner of certain real property, hereinafter legally described in Exhibit A, in the City of Charleston, Charleston County, South Carolina; and
>
> WHEREAS, such real property is within the bounds of the officially designated Historic District of Charleston, South Carolina and/or recognized by the United States Department of Interior through inclusion in the National Register of Historic Places and/or is significant in American history and culture and constitutes an important element in the architectural ensemble of the Charleston Old and Historic District, which district contributes significantly to the cultural heritage and visual beauty of Charleston, South Carolina and should be preserved; and
>
> WHEREAS, Grantee is authorized to accept real property and interests therein in furtherance of its purpose of preserving and protecting the historical and architectural heritage of Charleston and its environs; and
>
> WHEREAS, Grantor desires to grant and Grantee desires to accept, a facade (and/or open space) conservation easement with respect to the hereinafter described real property.
>
> WHEREAS, Grantor has agreed to make a charitable contribution of a Deed of Easement, as hereinafter contained, with respect to the above property, in order to further the conservation of the property and the goals of Grantee.

19.     The Deed of Conservation clearly evidences the owner-taxpayer-grantor's *intent* that the "restriction hereby imposed on the *use* of the property shall be a qualified conservation contribution in accord with Section 170(h) of the Internal Revenue Code" (emphasis added), as follows:

6

> which approval shall not be unreasonably withheld. The restriction hereby imposed on the use of the property shall be a qualified conservation contribution in accord with Section 170(h) of the Internal Revenue Code (1954 - as amended). The obligations of Grantor pur-

20. The Deed of Conservation *expressly* "does hereby grant" HCF "the right to restrict the use of" of the subject property, as follows:

> NOW THEREFORE, in consideration of the sum of One and no/100 ($1.00) Dollar, in hand, paid by Grantee to Grantor and in consideration of the recital and agreements contained herein, Grantor does hereby grant, sell and convey to Grantee, its legal successors and assigns, a facade (and/or open space) conservation easement, in perpetuity, in, on and over, and the right to restrict the use of, that property, described in Exhibit A.

21. The Deed of Conservation further states that "[w]ithout prior express written consent of" HCF, the "use" of the subject property "shall not be changed from those set forth in Exhibit B," as follows:

> IV. Without prior express written consent of Grantee, the type, use and density (percentage of ground covered by building) of the property shall not be changed from those set forth in Exhibit B.

22. The Deed of Conservation and its attached exhibits do *not* set forth plans for a hotel use.

C. **Acknowledgement and Observance of the Deed of Conservation *Over Four Decades***

23. In or around 1984, upon information and belief, the owner-taxpayer-grantor in fact took a significant federal tax deduction, under 26 U.S.C. § 170(h), based on the Deed of Conservation.

24. Since 1984, for four decades, under HCF's protection, the use of the subject property has been restricted in accordance with federal tax laws and regulations and the Deed of Conservation, "in furtherance of [HCF's] purposes in preserving and protecting the historical and

7

architectural heritage of Charleston and its environs . . . "in order to further the conservation of the property and the goals of [HCF]." Such restricted uses allowed by HCF have included the offices of a prominent regional architecture firm, an art institute teaching culinary and graphic arts, and a restaurant, each use serving and contributing to the local historic community in a mixed-use environment consistent with the mission of HCF.

25.    The Current Owner, either directly or through its beneficial owner, Karl H. Kuester, began purchasing portions of the subject property in 1989 having actual and record notice of the Deed of Conservation.

26.    Up until this dispute arose in 2019, the Current Owner acknowledged and observed HCF's rights and responsibilities under the Deed of Conservation, by using the subject property as allowed by HCF, addressing repairs and maintenance matters raised by HCF during yearly inspections of the Property, and by making requests for approval to HCF for various items (for example, relating to adding and repairing windows, enclosing an outdoor dining area, and placing an antenna on the building).

**D.    The Current Owner's Request to Change the Use to a Hotel; and its Attempt to Wrongfully Convert and Abrogate Plaintiff's Rights and Responsibilities**

27.    Beginning in 2019, upon information and belief, the Current Owner and a prospective purchaser of the subject property, working together, began pursuing a plan to make a more lucrative use of the subject property as a *hotel*.

28.    In May of 2019, without providing notice to HCF or requesting its approval, the Current Owner and a prospective purchaser of the subject property made an application to the City of Charleston Board of Zoning Appeals, requesting a "special exception" to use the subject property as a hotel. In that application, they failed to disclose that the use of the subject property is restricted by the Deed of Conservation, as required by S.C. Code Ann. § 6-29-1145(A) and the

8

application form itself, which includes the following question (which they left blank and did not answer):

☐ **YES** or ☐ **NO** - Is this Property restricted by any recorded covenant that is contrary to, conflicts with or prohibits the proposed land use encompassed in this permit application?   § 6-29-1145 of the South Carolina Code of Laws

That application has not been ruled upon by the City of Charleston Board of Zoning Appeals as of the date of this filing.

29. In or around October of 2019, the Current Owner and a prospective purchaser made a formal request to HCF to change the use of the subject property to a hotel. HCF formally denied that request based on its rights and responsibilities in the Deed of Conservation pursuant to federal tax laws and regulations, for the reasons, *inter alia*, that there has recently been an unprecedented proliferation of hotels in the area creating a monoculture of use contrary to the mixture of uses necessary to preserve and conserve the historic authenticity of the subject property and the cultural character and livability of the area.

30. In November of 2019, after HCF denied its request to change the use of the subject property to a hotel, the Current Owner asserted to HCF that HCF has no rights or responsibilities under the Deed of Conservation to restrict the use of the subject property. The Current Owner additionally continues to seek approval for a hotel use to the City of Charleston.

CAUSE OF ACTION

**(Declaratory Judgment)**

31. The foregoing allegations are repeated as if set forth verbatim herein.

32. This cause of action for a declaratory judgment is made under the authority of Declaratory Judgment Act, 28 U.S.C. § 2201(a).

33. This Court should make the following declarations of HCF's rights and responsibilities under federal tax laws and regulations, principally 26 U.S.C. § 170(h):

9

      i.      The Deed of Conservation clearly establishes the owner-taxpayer-grantor's *intent* to grant HCF "a restriction (granted in perpetuity) on the use which may be made of real property," under federal tax laws and regulations, principally 26 U.S.C. § 170(h), and any other applicable laws, binding the Current Owner; and

      ii.     HCF has rights and responsibilities to enforce the use restriction in the Deed of Conservation, including to refuse to allow a change of use of the subject property to a hotel, under federal tax laws and regulations, principally 26 U.S.C. § 170(h), and any other applicable laws.

34.    In the alternative, if this Court declares that HCF does not have rights and responsibilities to enforce the use restriction in the Deed of Conservation, including to refuse to allow a change of use of the subject property to a hotel, under federal tax laws and regulations, principally 26 U.S.C. § 170(h) *(for any reason, including but not limited to if the Deed of Conservation may be extinguished because a "subsequent unexpected change in the conditions surrounding the property" has made it "impossible or impractical the continued use of the property for conservation purposes"* (**<u>which HCF denies because the Current Owner merely seeks to make a more lucrative use of the subject property as a hotel</u>**) *under federal tax regulation, 26 CFR § 1.170A-14(g)(6))*, the Court should declare that HCF is entitled to receive proceeds from the Current Owner, "on a subsequent sale, exchange, or involuntary conversion of the subject property," to be used by HCF for other conservation purposes in an amount "at least equal to the proportionate value of the perpetual conservation restriction," up to an amount equal to "the full proceeds from the conversion without regard to the terms of the prior perpetual conservation restriction," under federal tax regulation, 26 CFR § 1.170A-14(g)(6), and any other applicable laws, rules, and regulations.

10

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff hereby prays that the Court award Plaintiff:

    i.      judgment in its favor;

    ii.     declaratory relief as set forth herein;

    iii.    the right to an injunction, as provided by Section VII the Deed of Conservation;

    iv.    the right to place a lien against the subject property, as provided by Section VII the Deed of Conservation;

    v.     attorneys' fees and costs, as provided by Section VII the Deed of Conservation;

    vi.    any further relief as the Court deems fair and equitable.

(Signature page to follow)

          */s/ Brian A. Hellman*
          Brian A. Hellman (9662)
          Jason S. Smith (11387)
          HELLMAN YATES & TISDALE, PA
          105 Broad Street, Third Floor
          Charleston, SC  29401
          (843) 266-9099
          (843) 266-9188 facsimile
          bh@hellmanyates.com
          js@hellmanyates.com

          *Attorneys for Plaintiff*

Charleston, South Carolina
December 9, 2019